COUNTY BOARD OF REVIEW OF ASSESSMENTS FOR LAKE COUNTY ET AL. *v.* KRANZ ET AL.

[No. 28,161. Filed June 7, 1946. Rehearing denied July 1, 1946.]

360

*George E. Hershman,* of Crown Point, for appellants.
*Stiles & Bayor,* of Gary, for appellees.

RICHMAN, J.—In 1945 upon petition of taxpayers in Hobart township, Lake County, pursuant to § 64-1019, (a), Burns' 1943 Replacement, the State Board of Tax Commissioners, after notice and hearing, ordered a re-assessment of all real estate in the township. The township assessor made the re-assessment and filed his return with the Auditor of Lake County as required by § 64-1017. At this juncture appellees procured a permanent injunction blocking review of the assessor's valuations by the county board of review under §§ 64-1201, 64-1205. If this board had been permitted to act, its action would have been subject to review by the State Board of Tax Commissioners on appeal of interested taxpayers. §§ 64-1303, 64-1321.

The Auditor and the Board of Review, sole defendants, have appealed and assigned error on the overruling of their demurrer to appellee's complaint. It is filed as a class action, but if the named plaintiffs, hereinafter called appellees, have no cause of action, neither has the class of which they are a part and for whom they sue.

Appellees allege that "probably less than four (4) per cent of the resident owners of taxable real estate" signed the initial petition. The Auditor certified that the required four per cent had signed and the State Board, whose duty it was to determine if the requisite number of signatures had been procured, so found and acted on the petition. Even if their action in this respect could now be reviewed, a sufficient petition was not jurisdictional for in the absence of a petition the State Board could have ordered the re-assessment "in its own discretion" upon such notice and hearing as was given. § 64-1019 (b).

The motives of those who circulated the petition are immaterial. So also the representations made by them to procure the signatures. The language of the petition was in substantial conformity with the statute.

The complaint also alleges that the assessor did not take into consideration the elements of value mentioned in § 64-1019 (b) but "wrongfully, unlawfully and arbitrarily raised the assessed valuation of all the real property and improvements thereon in aforesaid Hobart Township, and in most instances placed on the real estate and improvements thereon, an unfair, unequal and unequitable valuation." This valuation was not final. Appellees still had their remedy before the Board of Review and, if it should also act arbitrarily, an appeal to the State Board of Tax Commissioners. We shall not assume that either board would fail in the performance of its duty under the Constitution and statutes. Courts should be slow to interfere with the legislative process of taxation. Where arbitrary action of a ministerial officer is not final but may be corrected by reviewing agencies provided in the statute under which he is proceeding, ordi-

narily those agencies ought to be given an opportunity to act before resort to the courts.

Appellees say they have been denied due process. But the complaint shows that the notices and hearing provided by the statutes were given pursuant thereto. It is not charged that the statutes provided for insufficient notice and hearing. If in any other respect the due process clause of the Fourteenth Amendment is involved, it is not disclosed by the briefs.

From the facts alleged in the complaint it appears that the proceeding is intended to and will accomplish re-assessment of real estate only in Hobart township. Appellees contend that as a result taxpayers of that township will pay state taxes on a valuation made at 1945 price levels while taxpayers in other taxing districts of the state will pay on the basis of price levels entering into the last general or state-wide assessment made in 1932. They contend that such a re-assessment is void and justifies their resort to equity. Their argument resolves itself into the proposition that there never can be a local reassessment, except as a part of a state-wide assessment.

The legislature, at least since 1919, has not held that view. In that year a bill was enacted providing for a comprehensive scheme of property taxation. Acts of 1919, Ch. 59. Section 152 provided for a general quadrennial re-assessment, but the section contained a proviso which permitted interim local re-assessments. That section was construed in *Hasse* v. *Bielefeld, Treas.* (1926), 197 Ind. 498, 150 N. E. 413, and action under the proviso limited to the maintenance of uniformity. In other words it was recognized that "the official stamp of uniformity and equality of assessment" of the final assessment of 1922 might still leave inequalities which

the State Board under the proviso could correct. This section was amended from time to time, and by the 1937 amendment the legislature abandoned the scheme of compulsory general quadrennial assessments and committed to the State Board of Tax Commissioners the determination of the necessity for either general or local re-assessments. The General Assembly, which is required by Art. 10, § 1 of the Constitution to "provide, by law, for a uniform and equal rate of assessment and taxation," evidently concluded that it could perform its constitutional duty without frequent state-wide valuations of real property.

To accept appellees' argument and hold the 1937 amendatory act unconstitutional we should have to assume two things, first, that the quadrennial assessment in 1932 left tax valuations throughout the state in equality, second, that in the succeeding 13 years changes in value of real estate were at a constant or uniform rate throughout the state. It is not impossible nor improbable that after the 1013 township assessors, 92 county assessors, 92 boards of review and the State Board of Tax Commissioners had finished their work in 1932 there still remained individual assessments, township assessments or even county assessments that upon further investigation could be shown to be out of line with the valuations in the remainder of the state. We have no hesitancy in assuming that since 1932 increases or decreases in value may have occurred in such units, throwing them out of balance with the valuations elsewhere.

To the State Board of Tax Commissioners the legislature committed the task of ascertaining from time to time the existence of such inequalities and, when found, ordering a re-assessment to maintain uniformity. It seems to us that in many instances this can be done

without resorting to a state-wide valuation. We shall not indulge in the assumption that it is impossible in the administrative proceeding which appellee's injunction interrupted. When that proceeding has reached finality and interested taxpayers are able to show that the re-assessment resulted in unjust valuations, inequality and lack of uniformity, there will be time enough for the intervention of the courts in their protection. The 1937 Act is not unconstitutional in providing for local, without general, re-assessment. The proceedings for re-assessment were not void nor did they deny due process.

Decree reversed with instruction to sustain appellants' demurrer to the complaint.

NOTE.—Reported in 66 N. E. (2d) 896.