

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 23S-PL-60

## Keller J. Mellowitz,
*Appellant,*



FILED

Nov 21 2023, 4:14 pm

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## Ball State University and Board of Trustees of Ball State University,
*Appellees,*

and

## State of Indiana,
*Appellee-Intervenor.*

---

Argued: April 11, 2023 | Decided: November 21, 2023

Interlocutory Appeal from the Marion Superior Court
No. 49D01-2005-PL-15026
The Honorable Matthew C. Kincaid, Special Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-PL-337

---

**Opinion by Justice Molter**
Chief Justice Rush and Justices Massa, Slaughter, and Goff concur.

**Molter, Justice.**

After Ball State University switched to providing only online instruction for the 2020 spring semester due to the COVID-19 pandemic, Plaintiff Keller Mellowitz sued the university for breach of contract and unjust enrichment. He seeks to recover tuition and fees for in-person instruction and services he alleges the university promised him. Critical here, he wants to litigate his claims as a class action, representing similarly situated students to recover their tuition and fees too. But after he sued, the General Assembly passed, and Governor Holcomb signed, Public Law No. 166-2021, which, retroactive to March 1, 2020, prohibits class action lawsuits against postsecondary educational institutions for contract or unjust enrichment claims to recover losses stemming from COVID-19.

Based on that law, the trial court entered an order directing that while Mellowitz may pursue his claims against Ball State on his own behalf, he may not pursue a class action on behalf of other students. Through an interlocutory appeal of that order, the Court of Appeals reversed, agreeing with Mellowitz that the class action restriction was unconstitutional. We granted transfer, vacating the Court of Appeals opinion, and we now affirm the trial court's order.

First, we conclude the law does not violate the constitutional separation of powers because its limited scope (applying only to a narrow category of claims arising from COVID-19 against a defined group of defendants during a narrow period of time) reflects that it predominantly furthers a public policy objective—reducing postsecondary educational institutions' litigation exposure for their emergency responses to the pandemic—rather than a judicial administration objective. Second, the law does not unconstitutionally take Mellowitz's property without just compensation because he has no property right to sue on behalf of others through a class action. And finally, the law does not unconstitutionally impair Mellowitz's contract with Ball State because the General Assembly did not relieve Ball State of any of its contractual obligations to Mellowitz, which is why the trial court is permitting him to pursue his individual claims against the university.

# Facts and Procedural History

In the spring of 2020, Mellowitz was a student at Ball State University who had paid tuition along with mandatory fees for student services, university technology, student recreation, student health, and student transportation. About midway through the semester, on March 6, Governor Holcomb issued Executive Order 20-02 declaring that the rapid COVID-19 spread was a public health emergency. The pandemic response at all levels of government quickly ratcheted up, and just a few weeks later, the Governor issued Executive Order 20-08, which, among many other things, ordered individuals to remain at home with limited exceptions and ordered non-essential businesses to close. Educational institutions like Ball State were permitted to continue educating students, but only through distance education. Ball State complied with the Governor's order by canceling all in-person classes, closing campus facilities, and sending students home.

As the spring semester concluded, Mellowitz sued Ball State and its board of trustees on May 1, claiming they breached a contract to provide him in-person rather than online instruction, and even if they did not breach a contract, they were at least unjustly enriched by retaining tuition and fees for services they stopped providing. He requested "recovery of tuition and fees," and he sought to represent a class of similarly situated students. App. at 22.

Roughly a year later, on April 29, 2021, the Governor signed Public Law No. 166-2021, which was retroactive to March 1, 2020. One provision in that law, codified as Indiana Code section 34-12-5-7 ("Section 7"), prohibits class actions against covered entities, like Ball State, for breach of contract or unjust enrichment claims for losses arising from COVID-19. Ind. Code §§ 34-12-5-5, -7. Based on this new law, Ball State sought to preclude Mellowitz from suing on behalf of other students by filing a motion under Indiana Trial Rule 23(D)(4), which authorizes courts to enter an order "requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly."

Mellowitz argued the trial court should deny the motion because Section 7 is unconstitutional either because it is a procedural law improperly usurping the judicial power, it takes his property without just compensation, or it impairs his contract with Ball State. The Attorney General intervened to defend the constitutionality of the statute, and after a hearing, the trial court granted Ball State's motion, rejecting Mellowitz's arguments. The court ordered Mellowitz to file an amended complaint removing any allegations related to other class members, and it denied class certification. Mellowitz then moved to certify the trial court's ruling for interlocutory appeal, which the court granted.

Mellowitz appealed, and the Court of Appeals reversed the trial court's order, agreeing with Mellowitz that Section 7 was a procedural statute conflicting with Trial Rule 23 and therefore a nullity. *Mellowitz v. Ball State Univ.*, 196 N.E.3d 1256, 1257–58 (Ind. Ct. App. 2022). Ball State and the State then separately petitioned for transfer, which we granted, 205 N.E.3d 196 (Ind. 2023), thus vacating the Court of Appeals opinion, Ind. Appellate Rule 58(A).[1]

# Appellate Jurisdiction

Before turning to the issues on appeal, we begin by clarifying the basis for our appellate jurisdiction. Appellate Rule 14(C) provides a procedure for interlocutory review of orders granting or denying class certification. But Mellowitz never moved for class certification and the trial court's order was a Trial Rule 23(D)(4) order to amend the complaint to remove class allegations, so the parties were unsure of the proper procedural route for interlocutory review, and there is no case law from our Court or the Court of Appeals providing guidance.

Given the uncertainty, Mellowitz prudently covered all the bases by filing a Notice of Appeal for an Appellate Rule 14(A)(2) interlocutory

---

[1] We held oral argument at the University of Indianapolis. We thank the university for its outstanding hospitality, the attorneys for their excellent advocacy, and the students and other guests for their courtesy and insightful questions following the argument.

appeal as of right from an order compelling the execution of a document (i.e., signing the amended complaint pursuant to Trial Rule 11(A)); by requesting trial court certification and Court of Appeals acceptance of an Appellate Rule 14(B) discretionary interlocutory appeal; and by requesting that the Court of Appeals accept an Appellate Rule 14(C) interlocutory appeal from an order denying class certification. The Court of Appeals then entered an order concluding Appellate Rule 14(A)(2) does not apply because the trial court order did not carry financial or legal consequences akin to a final judgment, but either Appellate Rule 14(B) or 14(C) would suffice for appellate jurisdiction.

Because the trial court certified its order for interlocutory review, it makes no difference in this case, but the distinction between Appellate Rule 14(B) and Appellate Rule 14(C) can be critical—Appellate Rule 14(B) requires trial court certification for interlocutory review and Appellate Rule 14(C) does not. We therefore clarify that because a Trial Rule 23(D)(4) order to amend a complaint to remove class allegations is the functional equivalent of an order denying class certification, Appellate Rule 14(C), which provides for interlocutory review of orders granting or denying class certification, is the appropriate avenue for interlocutory review. *Cf. Microsoft Corp. v. Baker*, 582 U.S. 23, 34 n.7 (2017) ("An order striking class allegations is functionally equivalent to an order denying class certification and therefore appealable under Rule 23(f)." (cleaned up)).

## Standard of Review

This appeal concerns only the interpretation and constitutionality of a statute, which are questions we consider de novo. *State v. S.T.*, 82 N.E.3d 257, 259 (Ind. 2017) (constitutionality of statutes); *State v. Int'l Bus. Machines Corp.*, 964 N.E.2d 206, 209 (Ind. 2012) (interpretation of statutes).

## Discussion and Decision

Mellowitz raises three issues on appeal. First, he argues Section 7 runs afoul of the constitutional separation of powers because it limits class actions, which he contends is the prerogative of the judiciary, not the legislature. As we explain below, our recent decision in *Church v. State*, 189

N.E.3d 580, 590 (Ind. 2022), forecloses this argument because the statute predominantly furthers a public policy objective rather than a judicial administration objective.

Second, Mellowitz argues that retroactively applying the statute to his claim has the effect of taking his property without just compensation in violation of the state and federal constitutions because the statute eliminates his cause of action. We conclude the trial court was correct to reject this argument because Mellowitz's cause of action is for breach of contract and unjust enrichment, and the trial court is permitting him to continue pursuing those claims. Mellowitz has no property right to sue on behalf of others through a class action.

Third, Mellowitz argues the statute impairs his contract with Ball State, again in violation of the state and federal constitutions. This argument fairs no better because the General Assembly did not relieve Ball State of any contractual obligations to Mellowitz, and, again, the trial court is permitting Mellowitz to pursue his individual claims against the university.

Because the trial court correctly concluded the statute is constitutional and precludes a class action in this case, we affirm.

## I. Shielding postsecondary educational institutions from pandemic-related class action claims is within the General Assembly's legislative authority.

Although Mellowitz can sue Ball State to recoup his own tuition and fees, the trial court concluded Section 7 bars him from maintaining a class action to recover tuition and fees on behalf of other students. Section 7 says: "A claimant may not bring, and a court may not certify, a class action lawsuit against a covered entity for loss or damages arising from COVID-19 in a contract, implied contract, quasi-contract, or unjust enrichment claim." I.C. § 34-12-5-7. Mellowitz concedes the statute fits this case because Ball State is a covered entity and he is suing for breach of contract and unjust enrichment to recover damages arising from COVID-

19.[2] But he argues the trial court should have disregarded the statute because he contends it is unconstitutional. As he sees it, our Court promulgated Trial Rule 23 to govern which lawsuits may proceed as class actions, and Section 7 forbids even class actions that satisfy the rule's requirements. Because promulgating rules governing procedure in trial courts is within our domain, Mellowitz argues the legislature unconstitutionally usurped our judicial power when it enacted Section 7.

We instead share the trial court's view that the statute is constitutional. Without running afoul of our Indiana Constitution's separation of powers, our judiciary may accommodate statutes altering judicial processes when the statutes predominantly further public policy objectives rather than judicial administration objectives, so long as the statutes do not undermine the truth-seeking function of litigation, and they do not otherwise interfere with the judiciary's ability to fulfill its constitutional obligations. Recently, in *Church*, 189 N.E.3d at 590, we announced a new framework for this analysis of whether a statute reflects a valid legislative enactment or the usurpation of judicial power. And under that framework, we conclude Section 7 is a valid legislative enactment.

## A.  Our Constitution generally precludes the legislature from micromanaging court procedures.

The Indiana Constitution vests the General Assembly with the "[l]egislative authority," Ind. Const. art. 4, § 1, vests our state courts with the "judicial power," *id.* art. 7, § 1, and instructs that neither independent branch "shall exercise any of the functions" of the other. *Id.* art. 3, § 1. Enacting laws to protect Hoosiers' "'peace, safety, and well-being'" is a legislative function. *Whittington v. State*, 669 N.E.2d 1363, 1369 n.6 (Ind. 1996) (quoting Ind. Const. art. 1, § 1). And promulgating procedural rules for litigating disputes about those laws is part of the judicial function.

---

[2] "Covered entity" is a statutorily defined term that includes "an approved postsecondary educational institution," Ind. Code § 34-12-5-5(2), and "arising from COVID-19" is a defined term that includes "the implementation of policies and procedures to . . . prevent or minimize the spread of COVID-19," *id.* § 34-6-2-10.4(c)(1)(A); *see also id.* § 34-12-5-3.

*State ex rel. Bicanic v. Lake Cir. Ct.*, 260 Ind. 73, 76, 292 N.E.2d 596, 598 (1973) ("The Supreme Court has the inherent power to create rules of procedure and [that] right has been recognized by the Indiana General Assembly.").

Generally speaking, laws which establish rights and responsibilities are substantive (the legislative prerogative), and laws which "merely prescribe the manner in which such rights and responsibilities may be exercised and enforced" are procedural (the judicial prerogative). *Church*, 189 N.E.3d at 588 (quotations omitted). So under our separation of powers, if a "statute is a substantive law, then it supersedes our Trial Rules, but if such statute merely establishes a rule of procedure, then our Trial Rules would supersede the statute." *Id.* (cleaned up).

That seems clear enough at first blush, but substance and procedure coalesce when the General Assembly concludes there are circumstances when procedures are causing substantive harm—collateral damage that is unnecessary to resolving a legal dispute between parties. A good example is anti-SLAPP (Strategic Lawsuits Against Public Participation) laws, which Indiana has adopted along with thirty-one other states that similarly divide power between their legislative and judicial branches.[3] SLAPP suits are baseless suits intended to stifle constitutionally protected speech by burying—or threatening to bury—those expressing opposing viewpoints under crushing litigation expense and burdens. *See Gresk for Est. of VanWinkle v. Demetris*, 96 N.E.3d 564, 568 (Ind. 2018) (explaining that anti-SLAPP lawsuits reflect the understanding that "since at least the 1970s, ordinary individuals were being sued for simply speaking out politically," and the "defining goal of these lawsuits was not to win, but to silence opposition with delay, expense and distraction." (quotations omitted)).

---

[3] *See* Austin Vining & Sarah Matthews, *Overview of Anti-SLAPP Laws*, Reps. Comm. for Freedom of the Press, https://www.rcfp.org/introduction-anti-slapp-guide/ [https://perma.cc/8TML-B7R7] (last visited Nov. 20, 2023) ("As of April 2022, 32 states and the District of Columbia have anti-SLAPP laws . . . ."); F. Scott Boyd, *Looking Glass Law: Legislation by Reference in the States*, 68 La. L. Rev. 1201, 1251 n.214 (2008) (surveying state constitutional separation-of-powers limitations around the country).

Like most state legislatures, our General Assembly responded to this concern with an anti-SLAPP law. To invoke the law, a defendant files a motion to dismiss explaining the lawsuit is based on constitutionally protected speech, I.C. § 34-7-7-5, which the defendant must identify with specificity, *id*. § 34-7-7-9(b). Discovery is then stayed except as necessary to respond to the issues in the motion to dismiss. *Id.* §§ 34-7-7-6, -9(a)(3). And the trial court treats the motion to dismiss as a summary judgment motion, deciding it on an expedited basis. *Id.* § 34-7-7-9(a)(1).

The General Assembly was addressing a substantive concern: a chill on citizens' free speech rights. It was not trying to micromanage the courts. But because the source of the substantive harm is procedural—the abuse of court procedures—so too is the remedy of altering motion practice, shortening deadlines, resequencing discovery, and expediting a ruling. *Gresk*, 96 N.E.3d at 568 ("Anti–SLAPP statutes establish *key procedural tools* to safeguard First Amendment rights." (emphasis added)). While we do not foreclose the possibility that in an appropriate case we could conclude aspects of the anti-SLAPP law encroach on the judicial power, the law illustrates that "except at the extremes, the terms substance and procedure precisely describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn." *Church*, 189 N.E.3d at 589 (cleaned up).

## B. Our judiciary may accommodate statutes altering procedures if the statutes predominantly further public policy objectives and do not interfere with the orderly dispatch of judicial business.

Because substance and procedure sometimes coalesce, we have said that "the power to make rules of procedure in Indiana is neither exclusively legislative nor judicial." *State ex rel. Blood v. Gibson Cir. Ct.*, 239 Ind. 394, 399, 157 N.E.2d 475, 477 (1959). And when the legislature enacts laws with procedural means to achieve substantive policy objectives beyond the orderly dispatch of judicial business, we strive to work in a "spirit of cooperation between the otherwise independent branches of our government." *Church*, 189 N.E.3d at 598 (Goff, J., concurring) (quotations omitted).

That means doing what we can to accommodate legislation that predominantly furthers public policy objectives, so long as the legislature is not usurping the judicial prerogative of managing the courts. For example, we do not yield to statutes that we conclude interfere with litigation's truth-seeking function or with our ability to fulfill our constitutional obligations, including our obligations to ensure that all litigants are treated equally, that "[a]ll courts shall be open," that every person "shall have remedy by due course of law" for any injury, and that justice is administered "speedily." Ind. Const. art. 1, § 12; *see also Church*, 189 N.E.3d at 589 (discussing procedural rules that "foster accuracy in fact-finding" or allow the courts to "function efficiently" (quotations omitted)); *Carlson v. State ex rel. Stodola*, 247 Ind. 631, 638, 220 N.E.2d 532, 536 (1966) ("The courts are under a constitutional mandate to administer justice freely and without any restraint coming from any other governmental authority."). The Indiana Constitution designates our Court as "the final arbiter in case any conflict arises as a result of legislation." *McCormick v. Vigo Cnty. High Sch. Bldg. Corp.*, 248 Ind. 263, 266, 226 N.E.2d 328, 330 (1967).

Sometimes we cooperate with the General Assembly by expressly incorporating legislative accommodations into our rules. As examples, our Trial Rules defer to statutes specifying what form to use when initiating certain cases,[4] how to maintain confidentiality in cases presenting safety concerns,[5] how to serve parties,[6] which cases courts should prioritize,[7] and when courts should issue written findings and conclusions supporting a

---

[4] Ind. Trial Rule 3 ("A civil action is commenced by filing with the court a complaint or such equivalent pleading or document as may be specified by statute . . . .").

[5] T.R. 3.1(A)(8) (providing that in cases involving protective orders, the "initiating party may use the Attorney General Address Confidentiality program established by statute").

[6] T.R. 4.17 ("Rules 4 through 4.16 shall not replace the manner of serving summons or giving notice as specially provided by statute or rule in proceedings involving, without limitation, the administration of decedent's estates, guardianships, receiverships, or assignments for the benefit of creditors.").

[7] T.R. 40 ("Precedence shall be given to actions entitled thereto by any statute of the state, including hearings upon temporary restraining orders, injunctions and receiverships.").

judgment.[8] Our Appellate Rules likewise defer to statutes establishing when to initiate an appeal in certain circumstances,[9] which appeals to prioritize,[10] and how to request relief outside of motion practice.[11] Our cooperation is not a blank check though, and just as often we cannot accommodate the legislature, with some of our rules instead saying they govern over conflicting statutes.[12]

---

[8] T.R. 52(A)(3) (requiring findings and conclusions "in any other case[s] provided by these rules or by statute").

[9] Ind. Appellate Rule 14(A)(9) (governing the interlocutory appeal of an order "[i]ssued by an Administrative Agency that by statute is expressly required to be appealed as a mandatory interlocutory appeal"); App. R. 14(D) (providing that "[o]ther interlocutory appeals may be taken only as provided by statute").

[10] App. R. 21(A) ("The court shall give expedited consideration to interlocutory appeals and appeals involving issues of child custody, support, visitation, adoption, paternity, determination that a child is in need of services, termination of parental rights, and all other appeals entitled to priority by rule or statute.").

[11] App. R. 34(A) ("Unless a statute or these Rules provide another form of application, a request for an order or for other relief shall be made by filing a motion.").

[12] T.R. 69(E) ("Notwithstanding any other statute to the contrary, proceedings supplemental to execution may be enforced by verified motion or with affidavits in the court where the judgment is rendered . . . ."); T.R. 75(D) ("Any provision of these rules and any special or general statute relating to venue, the place of trial or the authority of the court to hear the case shall be subject to this rule, and the provisions of any statute fixing more stringent rules thereon shall be ineffective. No statute or rule fixing the place of trial shall be deemed a requirement of jurisdiction."); App. R. 5(A) ("Except as provided in Rule 4, the Court of Appeals shall have jurisdiction in all appeals from Final Judgments of Circuit, Superior, Probate, and County Courts, notwithstanding any law, statute or rule providing for appeal directly to the Supreme Court of Indiana. See Rule 2(H)."); App. R. 5(C)(2) ("No party shall file an assignment of errors in the Court of Appeals notwithstanding any law, statute, or rule to the contrary. All issues and grounds for appeal appropriately preserved before an Administrative Agency may be initially addressed in the appellate brief."); App. R. 9(A)(3) ("A judicial review proceeding taken directly to the Court of Appeals from an order, ruling, or decision of an Administrative Agency is commenced by filing a Notice of Appeal with the Clerk within thirty (30) days after the date of the order, ruling or decision, notwithstanding any statute to the contrary."); App. R. 9(I) ("In Administrative Agency appeals, the Notice of Appeal shall include the same contents and be handled in the same manner as an appeal from a Final Judgment in a civil case, notwithstanding any statute to the contrary."); App. R. 13 ("In cases taken directly to the Court of Appeals from the final orders, rulings or decisions and certified questions of an Administrative Agency, the preparation, contents, and transmittal of the Record on Appeal, to the extent possible pursuant to Rules 10, 11 and 12, shall be governed by the same provisions applicable to appeals from Final Judgments in civil cases, including all applicable time periods, notwithstanding any statute to the contrary.").

When we have not anticipated legislation in our own rules, we have sometimes still expressed our "assent" to a statute while resolving a case. *Humbert v. Smith*, 664 N.E.2d 356, 356 (Ind. 1996). In *Humbert*, we considered a paternity statute requiring courts to admit into evidence blood test results in circumstances where our Rules of Evidence required excluding the results. *Id.* at 356–57. We concluded the statute was procedural and conflicted with our Rules of Evidence, which would usually mean the rule governed instead of the statute. *Id.* at 357. But because the statute was "consistent with the special care Indiana's courts have taken toward the expeditious resolution of questions of paternity, custody, and support of children," we decided "we should assent to" the statute by treating it as an exception to the Rules of Evidence. *Id.*

We have also evaluated statutes and concluded the procedural elements are means to public policy ends, so the statutes are valid legislative enactments. Just a few months before the Court of Appeals issued its decision in this case, our Court decided *Church*, which established a new framework for evaluating whether a statute is, overall, a substantive law or a procedural law for purposes of deciding whether the law is a valid legislative exercise. We explained this is not "a mechanical test that simply stops when it finds a process." *Church*, 189 N.E.3d at 590. Instead, we evaluate the statute's "predominant purpose." *Id.* at 589. "If the statute predominantly furthers judicial administration objectives, the statute is procedural. But if the statute predominantly furthers public policy objectives involving matters other than the orderly dispatch of judicial business, it is substantive." *Id.* at 590 (quotations omitted).

At issue in *Church* was a statute limiting depositions of child sex crime victims even if the depositions are otherwise permitted under Trial Rule 26 (discovery scope and methods) and Trial Rule 30 (depositions). Depositions are procedural devices for obtaining testimony, and many of the statute's directives are procedural in nature: A defendant must first contact the prosecutor about deposing the child; if there is no agreement, the defendant must petition the court to authorize the deposition; and after a hearing, the court can only authorize the deposition if it finds there is a reasonable likelihood the child will be unavailable for trial and the deposition is necessary to preserve the testimony, or the deposition is

necessary and in the interests of justice due to other extraordinary circumstances. I.C. § 35-40-5-11.5.

But even with these procedural elements, we concluded the statute "is substantive because it predominantly furthers public policy objectives." *Church*, 189 N.E.3d at 590. We agreed with the State that the statute "creates substantive protections for child victims of sex crimes that guard against needless trauma inflicted through compelled discovery depositions by declining to grant defendants in this limited set of circumstances the substantive right to take discovery depositions." *Id.* at 590–91 (cleaned up). And while depositions are an important litigation tool, we concluded that limiting depositions in these circumstances would not interfere with the judiciary's truth-seeking function nor undermine the defendant's constitutional rights. *Id.* at 597. Instead, we noted the Trial Rules already gave trial courts discretion to limit discovery rights, including limiting depositions. *Id.* at 586.

As with the anti-SLAPP law, procedure was the source of the harm, so the remedy was too, but the objective was substantive—the legislature was trying to protect children, not micromanage the orderly dispatch of litigation.

## C.  Section 7 does not encroach on the judicial power.

Likewise, we conclude Section 7 is a valid legislative enactment. To be sure, just as depositions are "procedural devices," *Hickman v. Taylor*, 329 U.S. 495, 505 (1947), so too are class actions, *State ex rel. Firestone v. Parke Cir. Ct.*, 621 N.E.2d 1113, 1114 (Ind. 1993) (discussing "the procedural device of class actions"). But like in *Church*, everything about Section 7 and the context of its enactment conveys the General Assembly was tweaking a procedural rule to predominantly further a public policy objective—which here, both sides agree is to limit the university's litigation exposure for pandemic-related contract claims during a global crisis.

Section 7 does that in two related ways. The first is by limiting any potential payouts to only students who sue the university; there is no recovery for members of a putative class who do not assert a claim.

The second is by removing the potential for excessive settlement pressure. Sometimes class certification "can coerce the defendant into settling on highly disadvantageous terms, regardless of the merits of the suit," because litigating on a class-wide basis greatly increases "the magnitude of the potential damages." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011) (quotations omitted). To illustrate this magnitude, the University of Notre Dame's amicus brief reports that a federal putative class action against Notre Dame asserting similar pandemic-related claims converts an individual thirty-thousand dollar claim into a class claim for over one hundred million dollars. Another amicus brief reports that members of the Independent Colleges of Indiana face class claims exceeding their total endowments.

No party contends that when the General Assembly reconvened with its first opportunity to respond to the pandemic, it passed Section 7 as a reform measure with "judicial administration objectives" to improve or change "the orderly dispatch of judicial business." *Church*, 189 N.E.3d at 590 (quotations omitted). Instead, Section 7 reflects an attempt to minimize postsecondary educational institutions' litigation exposure for rapid, difficult decisions they had to make when confronting a historic disaster and complying with government directives. Most telling in this regard is that Section 7 was part of a broader bill establishing a number of pandemic legal protections, including protecting health care workers from professional discipline and tort liability, declaring that pandemic-related emergency orders did not create new causes of action, shielding other government entities from pandemic-related class actions for contract claims, and establishing immunity from tort claims for governmental entities and employees acting within the scope of their employment for COVID-19-related damages. *See generally* Pub. L. No. 166-2021, 2021 Ind. Acts 2253. The legislature also greatly limited the scope of the class action bar at issue here—Section 7 carves out a narrow category of claims (contract law claims arising from COVID-19)[13] against a defined group of defendants (government entities and postsecondary educational

---

[13] I.C. § 34-12-5-7.

institutions)[14] for a narrow period of time (state of disaster emergency declared between February 29, 2020 and April 1, 2022).[15]

As in *Church*, Section 7 reflects "a careful legislative balancing of policy considerations." 189 N.E.3d at 591 (quotations omitted). Mellowitz argues the balance is unfair because Ball State received substantial federal pandemic relief funds, and he contends that precluding class actions has the practical effect of shifting the COVID-19 financial burden onto students who did not receive that sort of relief in an era when students already shoulder substantial student-loan debt. But those are policy arguments that must be resolved by our General Assembly. "In determining whether legislation is violative of constitutional restraints the courts will confine themselves to the question, not of legislative policy, but of legislative power." *Dep't of Fin. Insts. v. Holt*, 231 Ind. 293, 301–02, 108 N.E.2d 629, 634 (1952).

Mellowitz further emphasizes that when explaining the test we announced in *Church*, we cited cases that in turn cited a Michigan Law Review Article, and that article says that whether to permit a class action is a matter of "judicial procedure" which court rules should cover. Charles W. Joiner & Oscar J. Miller, *Rules of Practice and Procedure: A Study of Judicial Rule Making*, 55 Mich. L. Rev. 623, 648 (1957). That is true, as far as it goes. Class actions are quintessentially procedural devices, just as depositions, bifurcated discovery, motions to dismiss, and summary judgment motions are procedural devices. So the analysis here might be different if the legislature were banning class actions altogether, *see, e.g.*, *Budden v. Bd. of Sch. Comm'rs of City of Indianapolis*, 698 N.E.2d 1157, 1162 (Ind. 1998) (acknowledging that sometimes class actions are "essential to the assertion of any claim at all"), just as the analysis in *Church* may have been different if the legislature were banning depositions altogether, and the analysis in the anti-SLAPP context might be different if the legislature

---

[14] I.C. § 34-12-5-5.

[15] I.C. § 34-12-5-2(a).

were superseding the pleading, discovery, and motion rules more broadly.

But in this context too, the legislature adopted a much narrower approach, and the *Church* test presupposes we are confronting a statute that arguably entails both substantive and procedural components. We are then required to assess whether the predominant purpose is substantive or procedural, which is consistent with the explanation in the Michigan Law Review article that "there are areas in which it is not clear whether the legislature or the judiciary should establish the necessary rules," and "theory must give way to reality." Joiner & Miller, *supra*, at 629. Here, the reality is that the legislature's predominant purpose was substantive.

Further illustrating the point, this is not the first time the General Assembly has altered class action procedures to address substantive concerns, and the class action prohibition here is the inverse of the Public Lawsuit Statute, which *requires* class treatment. I.C. § 34-13-5-2. That statute reflects a legislative acknowledgment that "litigation can be deployed to delay and sometimes even defeat public projects, and can be driven by a variety of motivations, some of which may have little to do with the merits of the project from the perspective of the general public." *Bonney v. Ind. Fin. Auth.*, 849 N.E.2d 473, 478 (Ind. 2006). Even if the litigation does not defeat the project, the delays still can "add millions of dollars in increased construction costs." *Huber v. Franklin Cnty. Cmty. Sch. Corp. Bd. of Trustees*, 507 N.E.2d 233, 236 (Ind. 1987).

Responding to these public policy concerns, the "statute imposes a number of *procedural rules* governing public lawsuits, including provisions that are designed to consolidate all litigation in one forum and the requirement that a bond be posted." *Bonney*, 849 N.E.2d at 479 (emphasis added). To save public projects from needless delay and death by a thousand litigation cuts, the statute directs that a public lawsuit "is a class suit (whether captioned as such or not)." I.C. § 34-13-5-2(b); *see also Huber*, 507 N.E.2d at 236 (explaining that the Public Lawsuit Statute's "goal is to require those attacking governmental decisions to bring their suits as class actions and to put a stop to serial litigation"). The requirement "to bring a public lawsuit as a class action neither confers new rights on the litigants

nor affords them new remedies." *Dible v. City of Lafayette*, 713 N.E.2d 269, 275 (Ind. 1999).

But just like the anti-SLAPP law and the child deposition statute in *Church*, even though the Public Lawsuit Statute does not alter the parties' underlying substantive legal rights and remedies, its procedural requirements are in service of public policy objectives that have nothing to do with judicial administration concerns. While the Public Lawsuit Statute requires class treatment, and Section 7 prohibits it, in both instances the General Assembly has defined a narrow set of circumstances involving a particular group of parties and regulated the availability of the class action procedural device to achieve public policy objectives.

Because Section 7 predominantly furthers public policy objectives rather than judicial administrative objectives, and because it does not undermine the truth-seeking function of litigation or the courts' constitutional obligations, the trial court was correct to conclude it is a valid legislative enactment.

## II. Section 7 is not an unconstitutional taking.

Mellowitz next argues that retroactively[16] prohibiting him from maintaining a class action on behalf of similarly situated students constitutes an unconstitutional taking. Both the state and federal constitutions prohibit the government from taking property without just compensation, and "[i]t has long been recognized that an accrued cause of action may be a property right." *Cheatham v. Pohle*, 789 N.E.2d 467, 473 (Ind. 2003); *see also* Ind. Const. art. 1, § 21; U.S. Const. amend. V. Mellowitz contends that by taking away his ability to maintain his suit as a class action, the State has taken away an accrued cause of action. The trial court

---

[16] Ball State argues the trial court did not apply the statute retroactively because even though the statute became effective after Mellowitz filed his complaint with class action allegations, it was nevertheless effective before he filed a motion asking the trial court to certify a class. We need not decide the question of whether the trial court's application of the statute was retroactive because Mellowitz's takings claim fails either way for the reason that he has no property right to maintain a class action.

rejected this argument, explaining that "[a] class action is not a vested property right capable of being taken," App. at 20, and we agree.

Mellowitz conflates the class action device with its underlying cause of action, but they are not the same. A "cause of action" is "[a] group of operative facts giving rise to one or more bases for suing," "a factual situation that entitles one person to obtain a remedy in court from another person," or "[a] legal theory of a lawsuit." *Cause of Action*, Black's Law Dictionary (11th ed. 2019). A "class action" is "[a] lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group." *Class Action*, Black's Law Dictionary (11th ed. 2019). In this case, Mellowitz has a cause of action for his contract and unjust enrichment claims, but the class action is just one potential means of pursuing his cause of action. A class action is not itself a cause of action, which is why if there is no underlying individual cause of action, there is no class action. *See Bd. of Rev. of Assessments for Lake Cnty. v. Kranz*, 224 Ind. 358, 360, 66 N.E.2d 896, 897 (1946) ("It is filed as a class action, but if the named plaintiffs, hereinafter called appellees, have no cause of action, neither has the class of which they are a part and for whom they sue.")

Even so, Mellowitz also argues that precluding the class action at least has the *effect* of eliminating his underlying cause of action, just as shortening a statute of limitations might. He reasons that "Section 7 removes the only effective remedy for redress for Mellowitz and his fellow students" because the cost and difficulty of pursuing individual claims may make them uneconomical. Resp. to Trans. at 21. But this argument fails on the facts and law.

As to the facts, there is no support in the record for the assertion that the only way it is worthwhile for students to pursue pandemic-related claims to recover tuition and fees is through a class action. Mellowitz does not tell us the amount of his claim, but Notre Dame reports that a similar claim by one of its students is for roughly thirty thousand dollars. Even setting aside the difference in public and private school tuition, our state courts routinely handle individual claims for amounts in this ballpark. And we have no way of knowing how many students have sued and why others have not—e.g., whether other students have foregone lawsuits because individual suits are not worth it, or instead because the distance

learning and other services their schools provided led them to conclude they do not have a valid claim. We cannot simply assume that Section 7 has the practical effect of foreclosing students from pursuing their claims because "every statute stands before us clothed with the presumption of constitutionality unless clearly overcome by a contrary showing," and it is "the party challenging the statute's constitutionality" that bears that burden, with all doubts resolved in favor of upholding the statute. *KS&E Sports v. Runnels*, 72 N.E.3d 892, 905–06 (Ind. 2017) (quotations omitted).

As to the law, Mellowitz presents a novel takings argument, pointing to *Guthrie v. Wilson*, 240 Ind. 188, 162 N.E.2d 79 (1959), as his best case from our Court in support. That was a case in which a minor's medical malpractice cause of action accrued before the enactment of a statute shortening the statute of limitations, and our Court interpreted the statute to apply prospectively, rather than retroactively, because "any legislative attempt to take away immediately and completely all legal means for the enforcement of [a vested] right . . . would amount to a subversion of the right itself." *Id.* at 82. But here the General Assembly has not "take[n] away immediately and completely all legal means" for Mellowitz to pursue his contract claims. *Id.* Just the opposite, the General Assembly preserved Mellowitz's right to sue Ball State on his own behalf, which the trial court is permitting him to do.

Because Mellowitz has no property right to maintain a class action, his takings claim fails.

## III. The statute does not unconstitutionally impair Ball State's contract obligations to Mellowitz.

Finally, Mellowitz argues that Section 7 violates the Contract Clauses in the state and federal constitutions. Article 1, section 24 of the Indiana Constitution prohibits any "law impairing the obligation of contracts," and Article 1, section 10 of the United States Constitution provides the same protection. *See Bruck v. State ex rel. Money*, 228 Ind. 189, 197, 91 N.E.2d 349, 352 (1950) ("The obligations of a valid contract are protected by both the State and Federal Constitutions."). The underlying concern of these provisions "is that a legislature or court will render invalid the

rights and obligations which the parties agreed to in their contract." *Evansville-Vanderburgh Sch. Corp. v. Moll*, 264 Ind. 356, 370, 344 N.E.2d 831, 841 (1976).

A plaintiff can only prevail on a Contract Clause claim if the law operates as "a substantial impairment of a contractual relationship," with "the severity of [the] impairment . . . measured by factors that reflect the high value the Framers placed on the protection of private contracts." *Clem v. Christole, Inc.*, 582 N.E.2d 780, 783–84 (Ind. 1991) (quotations omitted). The Framers understood that "[c]ontracts enable individuals to order their personal and business affairs according to their particular needs and interests." *Id.* at 784 (quotations omitted). And "[o]nce arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them." *Id.* (quotations omitted).[17]

The trial court rejected Mellowitz's Contract Clause argument because his "individual claim for breach of implied contract (alternatively unjust enrichment) remains and has not been impaired by the statute." App. at 20. Again, we agree. Section 7 does not alter the contractual relationship between Mellowitz and Ball State at all, and the trial court has permitted Mellowitz to litigate his breach of contract claim against the university.

Section 7 only prohibits Mellowitz from seeking to enforce *other students'* alleged contracts, but he does not point to any agreement he had with Ball State that guaranteed he could enforce other students' rights, and it is not enough to simply point out that Trial Rule 23 was part of the background law when Mellowitz and the university entered a contract. *Bryson v. McCrary*, 102 Ind. 1, 10, 1 N.E. 55, 60 (1885) (explaining "there are no vested rights in the law generally"). Mellowitz argues that precluding him from representing a class deprives him of his only effective remedy to enforce his own individual rights under his alleged contract with the university. But we must reject that argument for the same reason we

---

[17] Even if a statute substantially impairs a contract, it may nevertheless remain constitutional as a valid exercise of the State's police power if the statute is "necessary to meet an important general social problem." *Clem v. Christole, Inc.*, 582 N.E.2d 780, 784 (Ind. 1991) (quotations omitted).

rejected it in the takings context—we cannot accept the invitation to simply assume Mellowitz is without an effective contract remedy because Section 7 is presumed constitutional unless Mellowitz demonstrates otherwise, and he has not demonstrated that his suit against Ball State to recover his own tuition and fees is an inadequate means for enforcing his alleged contract rights.

## Conclusion

For these reasons, we affirm the trial court's decision.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Eric S. Pavlack
Colin E. Flora
Pavlack Law, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Brian J. Paul
Jane Dall Wilson
Paul A. Wolfla
Jason M. Rauch
Faegre Drinker Biddle & Reath LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE-INTERVENOR
Theodore E. Rokita
Attorney General of Indiana

Benjamin M. L. Jones
Assistant Section Chief, Civil Appeals

James A. Barta
Deputy Solicitor General

Abigail R. Recker

Deputy Attorney General

Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE INDIANA UNIVERSITY, PURDUE UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, AND INDEPENDENT COLLEGES OF INDIANA

Brian E. Casey

Sarah E. Brown

Barnes & Thornburg LLP

South Bend, Indiana

ATTORNEY FOR AMICUS CURIAE INDEPENDENT COLLEGES OF INDIANA

Jodie Ferise

Independent Colleges of Indiana

Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE INDIANA LEGAL FOUNDATION

Maggie L. Smith

Darren A. Craig

Frost Brown Todd LLC

Indianapolis, Indiana