

FILED

May 10 2018, 11:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 49S02-1711-MI-686

## Paul Gresk, Trustee for the Bankruptcy Estate of Derek VanWinkle and Stacey VanWinkle on behalf of M.V. and A.V., their minor children,

*Appellants (Plaintiffs)*

–v–

## Cortney Demetris, M.D.,

*Appellee (Defendant)*

## Stephen W. Robertson, Commissioner of the Indiana Department of Insurance,

*Party in Interest*

---

Argued: December 7, 2017 | Decided: May 10, 2018

Appeal from the Marion Superior Court, No. 49D05-1510-MI-35716

The Honorable John M.T. Chavis, II, Judge

On Petition to Transfer from the Indiana Court of Appeals,

No. 49A02-1610-MI-2287

---

**Opinion by Justice Massa**

Chief Justice Rush, Justice David, and Justice Goff concur.

Justice Slaughter not participating.

**Massa, Justice.**

Public participation is fundamental to self-government, and thus protected by the Indiana and United States Constitutions. When citizens are faced with meritless retaliatory lawsuits designed to chill their constitutional rights of petition or free speech, also known as Strategic Lawsuits Against Public Participation (SLAPP), Indiana's anti-SLAPP statute provides a defense.

Here, two minors and their parents filed a medical malpractice lawsuit against a doctor who reported suspected medical child abuse to the Department of Child Services (DCS). The doctor claimed the lawsuit was a SLAPP and her report to DCS was protected speech shielded by Indiana's anti-SLAPP statute. The trial court agreed and dismissed the lawsuit. We reverse, finding the anti-SLAPP statute inapplicable in this case because to be protected under Indiana's anti-SLAPP statute a person's actions must be "in furtherance of" his or her right of petition or free speech and "in connection with a public issue." Ind. Code § 34-7-7-5 (2017).

# Facts and Procedural History

Stacey VanWinkle, a neonatal-intensive-care-unit nurse, and Derek VanWinkle, a stay-at-home father, have two children, A.V. and M.V. Since birth, A.V. has suffered from several medical conditions, including gastrointestinal (GI) issues, requiring many procedures and medications.

In May 2013, Dr. Susan Maisel, A.V.'s doctor, became concerned that Stacey was exaggerating A.V.'s GI symptoms. Dr. Maisel recommended admitting A.V. to the hospital for observation. Dr. Maisel then contacted Dr. Cortney Demetris, a board-certified doctor in pediatrics and child-abuse pediatrics, about her concerns that A.V. was a victim of medical child abuse.[1]

---

[1] Medical child abuse, formerly called Munchausen syndrome by proxy, is a form of child abuse where a child receives unnecessary and potentially risky medical treatment due to false symptom reporting by a parent or caregiver.

In June 2013, A.V. was admitted for observation, and Dr. Demetris was her attending physician. After two days, Dr. Demetris noted in her medical files that A.V. was "a well appearing child" without "any significant medical complaints." Appellants' App. Vol. 2, p.127. Based on video surveillance from A.V.'s room, conversations with A.V.'s other physicians, and interactions with A.V.'s parents, Dr. Demetris concluded that A.V. suffered from medical child abuse. A hospital social worker then reported Dr. Demetris's diagnosis to DCS.

Less than a week later, DCS removed A.V. and M.V. from their parents and filed a petition alleging they were children in need of services (CHINS). Ultimately, A.V. and M.V. were returned to their parents. However, because Stacey worked with children, DCS conducted a Child Care Worker Assessment Review (CCWAR).[2] Following the CCWAR, DCS substantiated the allegations of abuse. Eventually, DCS dismissed the CHINS petition, but the VanWinkles sought administrative appeal of the substantiated allegations. After a hearing, an administrative law judge substantiated the neglect allegations as to A.V. only. This finding was ultimately reversed by the trial court.

The VanWinkles, individually and on behalf of A.V. and M.V., then filed a proposed medical malpractice complaint with the Indiana Department of Insurance, alleging Dr. Demetris's diagnosis of medical child abuse fell below the standard of care.[3] Before the medical review

---

[2] A CCWAR is required when a "child care worker," as defined in 465 Indiana Administrative Code section 3-1-5, has allegations of child abuse and/or neglect filed against them as an employee or personally. Ind. Dept. of Child Servs., *Ind. Child Welfare Policy Manual* § 2.03 (2014), *available at* http://www.in.gov/dcs/files/2.03%20Child%20Care%20Worker%20Assessment%20Review%20Process.pdf. The CCWAR provides an opportunity for the "child care worker" "to present any information he or she feels could assist DCS in making an accurate decision" with regard to substantiating the allegations. *Id.*

[3] The VanWinkles also filed suit under Title 42 of the United States Code section 1983, alleging DCS and Dr. Demetris engaged in a conspiracy to falsely accuse them of medical child abuse. The lawsuit was removed to federal court, where it was dismissed based on immunity and lack of evidence. *VanWinkle v. Nichols*, No. 1:15-CV-01082-JMS-MJD, 2015 WL 9275671 (S.D. Ind. Dec. 18, 2015).

panel could consider the complaint, Dr. Demetris moved for a preliminary determination of law and dismissal, arguing that her report to DCS was protected by Indiana's anti-SLAPP statute.[4] The trial court agreed and dismissed, finding "Dr. Demetris spoke upon a matter of public concern or public interest when she reported her diagnosis of medical child abuse to [DCS]" and therefore her report was protected speech covered under the statute. Appellants' App. Vol. 2, pp.15–16.

The VanWinkles appealed and our Court of Appeals reversed, concluding the anti-SLAPP statute did not apply. *Gresk v. Demetris*, 81 N.E.3d 645, 655 (Ind. Ct. App. 2017), *vacated*. As a matter of first impression, the panel concluded "child-abuse detection and prevention, on a macro level, is of great interest to the general public," but "the public interest in the more narrow issues addressed by Dr. Demetris's report to DCS . . . is not significant [because it concerned] a private matter." *Id.* at 654. The panel also found that Dr. Demetris "reported her suspicions of child abuse to DCS primarily because of her duty to report" which is "inconsistent with any claimed intent to engage in public debate or to petition the government." *Id.*

We granted Dr. Demetris's petition to transfer, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

A motion to dismiss under Indiana's anti-SLAPP statute is treated as a motion for summary judgment. I.C. § 34-7-7-9(a)(1). Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Megenity v. Dunn*, 68 N.E.3d 1080, 1083 (Ind. 2017).

---

[4] She also claimed dismissal was appropriate under the immunity section of Indiana's child abuse reporting statute, *see* Ind. Code § 31-33-6-1 (2017), and that no physician-patient relationship existed. Rulings on these issues were stayed until resolution of the anti-SLAPP question.

# Discussion and Decision

Our decision begins with a historical discussion of SLAPP lawsuits and Indiana's anti-SLAPP statute. We then apply Indiana's statute to the facts at hand, finding the anti-SLAPP defense inapplicable because Dr. Demetris's report was not made pursuant to her right of petition or free speech or in connection with a public issue.

## I.  SLAPPs identified as a threat to constitutionally protected activities.

### A.  SLAPPs generally.

In 1989, Professors Penelope Canan and George W. Pring observed that, since at least the 1970s, ordinary individuals were being sued for simply speaking out politically. *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Envtl. L. Rev. 3, 3, 5 (1989) [hereinafter *SLAPPs*]. These lawsuits implicitly challenged free speech or petition rights and sent the message that there was a "price" for civic engagement. *Id.* at 5–6. The "price" being a high-dollar retaliatory lawsuit—a meritless attempt at chilling participation in government. *Id.* at 5, 8. Professors Canan and Pring labeled these suits with the political-legal term "SLAPP," strategic lawsuits against public participation. *Id.* at 4. The defining goal of these lawsuits was not to win, but to silence opposition with "delay, expense and distraction." John C. Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPS*, 26 Loy. L.A. L. Rev. 395, 405 (1993) [hereinafter *Problem of SLAPPS*].

SLAPP lawsuits target a wide variety of political activity, including "reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations." *SLAPPs* at 5. And the public interest issues are equally as varied, ranging from zoning, health and safety, and environmental

protection to public education, animal welfare, and taxation. Penelope Canan & George W. Pring, *Studying Strategic Lawsuits Against Public Participation: Mixing Quantitative and Qualitative Approaches*, 22 Law & Soc'y Rev. 385, 388–89 (1988).

Ultimately, Canan and Pring's studies revealed a "growing legal risk for ordinary citizens who speak up on community political issues," and they urged all three branches of government to act. *SLAPPs* at 8, 15. Since then many states have adopted anti-SLAPP statutes. An integral component of these statutes is balancing a plaintiff's right to have his or her day in court and a defendant's free speech and petition rights, while simultaneously providing a framework to distinguish between frivolous and meritorious cases. *Problem of SLAPPS* at 397–98. If the lawsuit stems from a legitimate legal wrong, it is not a SLAPP. George W. Merriam, *Identifying and Beating a Strategic Lawsuit Against Public Participation*, 3 Duke Envtl. Law & Pol'y F. 17, 18 (1993). But, if the lawsuit is filed for an ulterior political end, it is a SLAPP. *Id.* Anti-SLAPP statutes establish key procedural tools to safeguard First Amendment rights.

## B. Indiana's anti-SLAPP statute.

Indiana adopted its anti-SLAPP statute in 1998 to address and reduce abusive SLAPP litigation. 1998 Ind. Acts 1403-06 (codified at I.C. §§ 34-7-7-1 to -10). Defendants may invoke the anti-SLAPP defense when faced with a civil action for acts or omissions "in furtherance of the person's right of petition or free speech" under the United States Constitution or Indiana Constitution "in connection with a public issue" and "taken in good faith and with a reasonable basis in law and fact." I.C. § 34-7-7-5. Once an anti-SLAPP motion to dismiss is filed, discovery is stayed except as necessary to respond to the issues raised in the motion. *Id.* §§ 34-7-7-6, -9(a)(3). Defendants who successfully invoke the statute's defense are entitled to dismissal and reasonable attorney's fees and costs. *Id.* § 34-7-7-7. But, if an anti-SLAPP motion is "frivolous" or "solely intended to cause unnecessary delay," the plaintiff may recover such fees and costs associated with answering. *Id.* § 34-7-7-8. Dismissal under the statute is in addition to other remedies provided by the law. *Id.* § 34-7-7-10.

## II. Indiana's anti-SLAPP statute is inapplicable in this case.

Dr. Demetris argues that, as a matter of first impression, Indiana's anti-SLAPP statute should be broadly construed to afford protection to reports of suspected child abuse. The VanWinkles respond that the anti-SLAPP statute does not apply to these facts, which concern a statutory duty to report involving a private, confidential matter.

SLAPPs can be difficult to identify. But for the anti-SLAPP statute to apply, the statutory requirements of Indiana Code section 34-7-7-5 must be satisfied. Upon receiving an anti-SLAPP motion to dismiss, the court must determine three things: (1) whether an action was "in furtherance of the person's right of petition or free speech;" and, (2) if so, whether the action was "in connection with a public issue." *Id.* § 34-7-7-5(1). If both requirements are satisfied, the court then analyzes (3) whether the action was "taken in good faith and with a reasonable basis in law and fact." *Id.* § 34-7-7-5(2).

Here, we find the anti-SLAPP statute inapplicable because Dr. Demetris's report was not made pursuant to her right of petition or free speech. Normally, this would end the analysis because all three requirements must be met. However, because this is an issue of first impression, we also address whether reports of child abuse are matters of public interest.

### A. Dr. Demetris's report was not made in furtherance of her right of petition or free speech.

The First Amendment protects a person's right to "petition the Government for a redress of grievances," and prohibits the government from "abridging the freedom of speech."[5] U.S. Const. amend. I. These

---

[5] The First Amendment has been incorporated to the states through the Fourteenth Amendment. *Love v. Rehfus*, 946 N.E.2d 1, 8 n.5 (Ind. 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 336 n.1 (1995)).

traditional-American constitutional rights involve "personal expression," and citizen participation in government. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). Persons exercising their right of petition "express their ideas, hopes, and concerns to their government and their elected representatives" with the purpose of "seeking redress of a grievance." *Id.* Persons exercising their right of free speech do so to advance "the public exchange of ideas" essential to a healthy democracy. *Id.*

Dr. Demetris did not exercise her right to petition. Her report was not made to address a grievance of her own, but instead to simply report her diagnosis of medical child abuse to DCS. *Cf. Novoselsky v. Brown*, 822 F.3d 342, 355–56 (7th Cir. 2016) (noting an attorney who advocates on a client's behalf is not exercising personal First Amendment rights). Similarly, once Dr. Demetris arrived at her diagnosis, she had a duty to report it or face potential criminal repercussions, inconsistent with any intent to facilitate debate.[6] *See Kentner v. Timothy R. Downey Ins., Inc.*, 430 F. Supp. 2d 844, 846 (S.D. Ind. 2006) (finding Indiana's anti-SLAPP defense inapplicable where actions are "simply in furtherance of [person's] own personal goals"); *see also Kadambi v. Express Scripts, Inc.*, 86 F. Supp. 3d 900, 909 (N.D. Ind. 2015) (noting self-motivated communications to avoid legal liability were "inconsistent with any claimed intent to engage in public debate"). Once the report was made, Dr. Demetris fulfilled her statutory obligations and any further action was up to DCS.[7]

While there may be some set of facts where a doctor's mandated report is in furtherance of First Amendment rights, these are not it. By simply reporting her statutorily-required diagnosis to DCS, Dr. Demetris was not

---

[6] *See* Ind. Code § 31-33-5-1 (2017) ("[A]n individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report[.]"); Ind. Code § 31-33-22-1(a) (2017) ("A person who knowingly fails to make a report required by IC 31-33-5-1 commits a Class B misdemeanor.").

[7] *See* Ind. Code § 31-33-8-1 (2017) (upon receiving a report from medical personnel, DCS forwards the report to the local DCS office to determine if DCS will initiate an assessment).

engaged in any political advocacy guaranteed to her under the right to petition the government.

Likewise, Dr. Demetris's report was not made pursuant to her free-speech rights because (1) it was the product of a statutory duty, not a constitutional right; and (2) it was confidential.[8] *See Kadambi*, 86 F. Supp. 3d at 909 (finding communications were not in furtherance of free speech rights because they were made to avoid legal liability and concerned a private matter). These aspects of the report belie any purported exchange of ideas. As our Court of Appeals explained, the First Amendment protects the "unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Lach v. Lake Cty.*, 621 N.E.2d 357, 358 (Ind. Ct. App. 1993). Dr. Demetris's report was not speech in relation to her participation in government. Instead, the VanWinkle's lawsuit alleged a legitimate legal wrong, medical care which they believe fell below the standard of care and resulted in damages. It was not an attempt to silence Dr. Demetris from making these types of reports or diagnoses.

## B. Dr. Demetris's report was not made in connection with a public issue.

Most of the briefing in this case concerns whether child abuse is a public issue. Dr. Demetris directs this Court to decisions from California courts, specifically *Terry v. Davis Community Church*, 131 Cal. App. 4th 1534 (2005) and *Cross v. Cooper*, 197 Cal. App. 4th 357 (2011), arguing specific circumstances of child abuse are public issues. The VanWinkles argue that child abuse **generally** is of concern to the public, but specific, individual reports are not. They find the reasoning in *Kadambi* persuasive. *See* 86 F. Supp. 3d at 909 (finding practice of medicine and pharmacy are of great public interest on a macro level, but the case's narrow issue involving denied patient prescriptions was not significant to the public).

---

[8] *See* Ind. Code §§ 31-33-18-1, -5 (making calls to DCS child abuse hotline and DCS reports of child abuse are confidential).

As required by the anti-SLAPP statute, Dr. Demetris identified the specific public issue that prompted constitutionally-protected acts in this case as "Dr. Demetris reporting her suspicions that her patient, A.V., was the victim of medical child abuse."[9] Appellants' App. Vol. 2, p.33.

With this in mind, we note that this Court has not addressed what is or is not a "public issue" under Indiana's anti-SLAPP statute, and we are doubtful an all-encompassing definition can be given. Regarding the First Amendment, we have said that speech is in connection with a matter of public concern if it is addressed to "'any matter of political, social, or other concern to the community,' as determined by its content, form, and context." *Love v. Rehfus*, 946 N.E.2d 1, 9 n.6 (Ind. 2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). We think this is a sufficient guide to determining what is a "public issue," and courts should analyze the narrow statements at issue, avoiding a sweeping view of what is "public."[10]

While child abuse in certain instances may be an issue of public interest, it is not in this case. Here, the form of Dr. Demetris's report was confidential, including content specific to one minor, A.V., and potential abuse by her parents. We agree with Dr. Demetris that child abuse reporting is of general public interest and, indeed, to further that interest the legislature has provided immunity to those who report. But that does

---

[9] *See* I.C. § 34-7-7-9(b) ("The person who files a motion to dismiss must state with specificity the public issue or issue of public interest that prompted the act in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana.").

[10] We decline to adopt the "public interest" or "public issue" categories identified in *Cross v. Cooper*, 197 Cal. App. 4th at 912–14, which were derived from California's anti-SLAPP statute and their legislature's directive to "construe[ the statute] broadly." Cal. Civ. Pro. Code § 425.16 (2018). Our General Assembly has not provided a similar legislative command. Likewise, we do not find *Terry v. Davis Community Church* persuasive because it is based on California's broad interpretation of public interest and does not involve a confidential report to a governmental agency. 131 Cal. App. 4th at 1538–43 (applying California's anti-SLAPP statute to statements made by a church, pastor, and church leaders who distributed a report to parents of youth group members detailing the church's investigation into an inappropriate sexual relationship between a youth group member and youth group leader).

not make every report a newsworthy event, particularly when the substance of the report is confidential and concerns a private matter. *See Hamilton v. Prewett,* 860 N.E.2d 1234, 1248 (Ind. Ct. App. 2007). Thus, based on the narrow content, form, and context of this report—medical child abuse of one child—it was not a matter of public concern.

## Conclusion

Indiana's anti-SLAPP statute was adopted in response to the discrete problem of retaliatory lawsuits aimed at chilling constitutional rights. The VanWinkles' lawsuit "is not the type of lawsuit that the anti-SLAPP statute was enacted to prevent" because it was not filed to stifle Dr. Demetris's "speech on a public issue or an issue of public interest," but to recover damages for alleged medical malpractice. *Id.* Thus, we reverse, and remand for consideration of the stayed issues.[11]

Rush, C.J., and David and Goff, JJ., concur.

Slaughter, J., not participating.

---

[11] This decision expresses no opinion on the outcome of the stayed issues.

ATTORNEYS FOR APPELLANTS

Ronald J. Waicukauski

Price Waicukauski Joven & Catlin, LLC

Indianapolis, Indiana

William W. Gooden

Maggie L. Sadler

Clark, Quinn, Moses, Scott & Grahn, LLP

Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Bryce H. Bennett, Jr.

Laura S. Reed

Laura K. Binford

Courtney David Mills

Riley Bennett Egloff LLP

Indianapolis, Indiana